UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN WHITE et al,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | CASE NO. C20-841 MJP<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court upon Plaintiff's Motion for Partial Summary Judgment. (Dkt. No. 11.) Having reviewed the Motion, the Response (Dkt. No. 14), the Reply (Dkt. No. 16), and all related papers, the Court DENIES the Motion.

**Background**

1. The Policy

On October 14, 2015 Plaintiffs John White and Shelli Park (referred to as "the Whites" in the Parties' briefing) obtained a homeowners policy from Defendant, Liberty Mutual Insurance

Company that renewed annually.  (Dkt. No. 12, Declaration of John White ("White Decl."), Ex. A.; Dkt. No. 14 at 9.)  Under the Policy, Liberty agreed to insure Plaintiffs:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or **property damage** caused by an **occurrence** to which this coverage applies, we will:
>
>> pay up to our limit of liability for the damages for which the insured is legally liable.
>
> ***
>
>> provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

(White Decl., Ex. A.)  "[P]roperty damage" is defined in the Policy as "physical injury to, destruction of, or loss of use of tangible property."  (Id.)  "Occurrence" means an "accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . property damage."  (Id.)  The Policy explicitly excludes coverage for "property damage" . . . "which is expected or intended by the insured" or "arising out of a premises . . . owned by an insured."  (Id.)

   2.  The Underlying Lawsuit

On September 28, 2018 the City of Burien sued Plaintiffs in King County Superior Court, alleging that the Whites had engaged in "extensive unpermitted grading and construction activity which violates the Burien Municipal Code and the RCW."  (Dkt. No. 13, Declaration of Thomas M. Williams ("Williams Decl."), Ex. A ("Underlying Compl."), ¶ 3.3.)  According to Burien, Plaintiffs' Property was located on a "landslide area," "critical area," and "shoreline" area, and therefore subject to various Burien Municipal Codes ("BMC") requiring Plaintiffs to obtain permits before conducting any construction or clearing on their property.

Most of the allegations against the Whites explicitly state that their conduct occurred "on the Property," specifically defined in the complaint as the Whites' address.  (Id., ¶ 2.2.)  For

1  instance, the City alleges that the "Whites injured, damaged, or killed trees located on the
2  Property without permits," added new dormers "to increase living space at the west side of the
3  residence," and "installed a fountain on the west edge of the Property without permits." (Id., ¶¶
4  3.9, 3.11(b), 3.13.)
5  But some allegations are less explicit about where the damage occurred. The City alleges
6  the "Whites constructed retaining walls without permits, in violation of BMC 15.05.235 (Permits
7  Required) and BMC 19.40.090 (Critical Area Review)" and "installed a fence within the
8  shoreline jurisdiction and without a Substantial Shoreline Development Permit, in violation of
9  BMC 20.35.010." (Id., ¶¶ 3.12, 3.14.)
10  The City seeks an Order requiring the Whites to abate the nuisances on the Property,
11  prohibiting future violations of state law or City code, and allowing the City to inspect and
12  monitor compliance with the court's orders. The City also seeks declaratory judgment that the
13  Property constitutes a nuisance, a money judgment in favor of the City reflecting civil penalties
14  chargeable against the Whites, and all penalties, costs of abatement, reasonable attorney fees and
15  costs. (Id., ¶ 5.1-5.7.) Since November 2019, the Superior Court case has been continued many
16  times, but no other events have taken place. See City of Burien v. White, Case No.
17  18-2-24287-8 KNT.
18      3.  The Tender
19  Although the Underlying Lawsuit was filed on September 28, 2018 and the Whites
20  answered on December 18, 2018, they did not tender the Underlying Lawsuit to Liberty until
21  November 5, 2019. (Williams Decl., Ex. B at 3.) The Underlying Lawsuit was tendered only
22  after Mr. White first attempted to obtain coverage on July 3, 2019 for "a legal battle with the city
23  after [he] complain[ed] . . . [about] a City storm drain that drains onto the Property." (Dkt. No.
24

15, Declaration of Sarah Eversole ("Eversole Decl."), Ex. 1.)  Coverage was denied for that claim on August 11, 2020.  (Id.)  Plaintiff's counsel then sent an unstamped version of the City of Burien's complaint to Liberty on November 19, 2019, tendering the claim 13 months after the case was filed.  (Id.)

Liberty assigned a claims' adjuster but did not take any further action for five months.  (Id.)  Then, from April 13, 2020 until May 26, 2020 Liberty's adjuster repeatedly attempted to contact the Whites' attorneys, a total of seven times.  (Eversole Decl., Ex. 3.)  On April 22, 2020, while still attempting to reach the Whites' attorneys, Liberty wrote to the Whites notifying them that Liberty "cannot accept or reject your request for a defense and/or indemnity at this time as this matter will need to be further investigated."  (White Decl., Ex. B.)

On May 27, 2020 Liberty's claims' adjustor finally met with the Whites' attorneys and asked about the August 24, 2018 letter referenced in the Underlying Complaint.  (Id. at 11.)  The Whites' attorneys explained that each of the violations listed in the letter "involved improvements to land/house" and "all relate to work [Mr. White] did when he first moved in."  (Id.)  But the Whites did not receive notices from the City until "years later."  (Id. at 10.)  And the Whites' attorney believes the City alleged the violations took place in 2012 "because that was when [Mr. White] bought the property."  (Eversole Decl., Ex. 3 at 10.)  When asked if there was "any dispute that there is property damage to the [C]ity's property," the Whites' attorneys "adv[ised] that [the City] alleged that some of the insured's work affected the stability of the hillside, including potentially mismanagement of the water."  (Id.)

During the meeting, the claims adjustor asked for Burien's 2018 letter to the Whites that is referenced in the Complaint so she could "finalize [her] coverage review."  (Id.)  On June 3rd

and 11th the claims' adjustor emailed the Whites' attorneys "advising the requested documents are needed in order for us to finalize our coverage investigation." (Id.)

On June 12, 2020 the Whites served Liberty with an IFCA complaint. (Id., Ex. 4.) On July 23, 2020 Liberty agreed to provide a defense to the Whites, subject to a full reservation of rights. (White Decl., Ex. C.) As part of the offer, Liberty agreed to pay all "reasonable and necessary expenses related" to the pre-tender defense of the suit as well as to retain counsel for the remaining defense of the suit. (Id. at 3.) The Whites rejected Liberty's offer as untimely. (Williams Decl., Ex. C.)

    4.    <u>The Present Lawsuit</u>

Plaintiffs filed this lawsuit on June 3, 2020. They now move for partial summary judgment, asking the Court to find that Liberty: (1) breached its duty to defend; (2) acted unreasonably, estopping it from denying coverage; and (3) violated the Insurance Fair Conduct Act ("IFCA"). For the reasons discussed below, the Court finds that Liberty has a duty to defend but the Whites have failed to demonstrate harm caused by Liberty's delay or that Liberty acted unreasonably or with bad faith, necessary elements of each of Plaintiffs' claims.

**Discussion**

**I.**    **Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). To defeat a motion for summary judgment, the non-movant must point to facts supported by the record which demonstrate a genuine issue of material fact. <u>Lujan v. National Wildlife Foundation</u>, 497 U.S.

1  871, 888 (1990).  Conclusory, non-specific statements are not sufficient.  Id. at 889.  Similarly,

2  "a party cannot manufacture a genuine issue of material fact merely by making assertions in its

3  legal memoranda."  S.A. Empresa v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982).

4  **II.     Duty to Defend/Coverage by Estoppel**

5  **A. Duty**

6  All that is required to trigger the duty to defend is the "potential" that "allegations in the

7  complaint could conceivably impose liability on the insured."  Woo v. Fireman's Fund Ins. Co.,

8  161 Wn.2d 43, 60 (2007) (emphasis in original).  "[A]ny reasonable interpretation" of the policy

9  that invokes coverage for the insured will control the question of whether a duty to defend has

10 arisen, and the insured is entitled to the benefit of any uncertainty, whether legal or factual.  Am.

11 Best Food v. Alea London, Ltd., 168 Wash.2d 398, 405 (2010).

12 Liberty contends it has no duty to defend because the City's claims are (1) within the

13 Policy exclusions, (2) involve conduct that occurred before the Policy's inception, and (3) do not

14 constitute a claim for damages that would be covered by the Policy.  None of these arguments

15 overcome the strong presumption in favor of Liberty's duty to defend.

16 1.  Policy Exclusions

17 Liberty first argues that the Underlying Complaint did not trigger the duty to defend

18 because the Policy explicitly excludes coverage for lawsuits brought for property damage to the

19 Whites' property, or for intentional conduct, both of which are alleged in the City's Complaint.

20 (Dkt. No. 14 at 13.)  But it is conceivable that some allegations describe unintentional harms

21 occurring off the Property.  The City alleged the Whites "constructed retaining walls without

22 permits," "installed a fence within the shoreline jurisdiction," and installed new plumbing "that

23 may require backflow protection and may also cross over an onsite septic system."  (Underlying

24

Compl., ¶¶ 3.11(d), 3.12, 3.14.)   And when Liberty's claims' adjustor asked the Whites' attorneys if there was "any dispute that there is property damage to the [C]ity's property," the Whites' attorney "adv[ised] that [the City] alleged that some of the insured's work affected the stability of the hillside, including potentially mismanagement of the water." (Eversole Decl., Ex. 3 at 11.)

It is therefore not clear that the allegations all fall within the Policy's exclusions, especially when construing the exclusionary clauses narrowly "for the purpose of providing maximum coverage for the insured." George v. Farmers Ins. Co., 106 Wash.App. 430, 439 (2001).

2. Timeline of the Occurrences is Ambiguous

Liberty also argues that "the code violations occurred in 2012, years before the inception of the first Liberty policy in late 2015, and the insureds knew or should have known that the unpermitted construction on their waterfront property would result in violations of City code . . . ." (Dkt. No. 14 at 14.)   But Liberty overstates the City's allegations.  Instead, the City alleged that "[s]ince 2012, the City has been aware of the various BMC violations at the Property." (Underlying Compl. ¶ 3.16 (emphasis added).)   The Underlying Complaint does not state when the City informed the Whites of the violations.   And when asked by the claims' adjustor, the Whites' attorney asserted:

> [S]he is not sure why [the City] picked 2012 as the starting point.  She thinks they picked that because that was when [Mr. White] bought the property, but the insured never received any notices from the [C]ity regarding violations during that time.  He didn't receive one until years later."

(Eversole Decl., Ex. 3 at 10.)   Further, the Underlying Complaint alleges that "the acts complained of have been committed, and continue to occur." (Underlying Compl. ¶ 1.2.)   Construing any ambiguities in favor of the duty to defend, it is plausible that at least some of the

alleged conduct occurred after the Policy's inception and the Whites were only made aware of the resultant damage years later.

### 3. The Underlying Complaint States a Claim for Damages

Finally, Liberty argues the City is not seeking "damages" under the Policy, which only covers "those sums that the insured becomes legally obligated to pay as damages because of 'property damage' to which the insurance applies." (Dkt. No. 14 at 18.) To begin, the City is explicitly seeking damages, including "a money judgment in favor of the City reflecting civil penalties chargeable against the Whites, and all penalties, costs of abatement, reasonable attorney fees and costs." (Underlying Compl, ¶ 5.1-5.7.) Additionally, Washington courts have found a duty to defend even where a complaint does not specifically seek damages, "if the allegations of the complaint, if proved, would give rise to liability." Third-party policies—Duty to defend—Definition of the duty, 16A Wash. Prac., Tort Law And Practice § 28:8 (5th ed.); See also Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash. 2d 869, 887 (1990) (holding that cleanup costs required pursuant to liability under CERCLA constitute "damages").

This concept is supported by the case Liberty cites, Wampold v. Safeco Ins. Co. of Am., 409 F. Supp. 3d 962 (W.D. Wash. 2019), aff'd, 820 F. App'x 598 (9th Cir. 2020). In Wampold, the Court held that the repairs recommended in a geotechnical report required by the city following a landslide were not covered under the homeowners policy "because although it was required by the City, it did not constitute a claim for damages for which the Wampolds were legally liable." Id. at 967. But the court distinguished the case from situations like the one here, noting there was "no statute imposing liability on the Wampolds, and the City itself was not damaged by the Wampold slide." Id. at 969. These facts are distinguishable from the

Underlying Lawsuit, where the City explicitly seeks monetary damages, the Whites are facing legal liability, and the City's property was potentially damaged.

**B. Harm**

While the Underlying Complaint triggered a duty to defend, the Whites have failed to demonstrate that Liberty's delayed offer to defend caused any harm, a necessary element of each of the Whites' claims.

1. No Actual Harm

Liberty has offered to provide a defense to the Whites, including all "reasonable and necessary expenses related" to the pre-tender defense of the suit. (White Decl., Ex. C.) And since November 2019 when the Whites notified Liberty of the Underlying Complaint, the Superior Court case has been continued many times, but no other events have taken place. City of Burien v. White, Case No. 18-2-24287-8 KNT. There is nothing in the Whites' materials that suggests they were harmed by the delay.

2. No Presumption of Harm/Coverage by Estoppel

The Whites implicitly acknowledge that they have not demonstrated harm, arguing instead that the Court should find a presumption of harm based on Liberty's unreasonable conduct. (Dkt. No. 11 at 7-8.) According to the Whites, this unreasonable conduct includes Liberty's failure to construe the allegations in the complaint in their favor, improper consideration of materials extrinsic to the complaint, and failure to timely respond to the tender.

Unless a failure to defend was unreasonable, frivolous, or unfounded, the denial "does not constitute bad faith, trigger a presumption of harm, or allow coverage by estoppel." Kirk v. Mt. Airy Ins. Co., 134 Wash. 2d 558, 560-61 (1998). Establishing a cause of action under IFCA also requires demonstrating that there was an unreasonable denial of coverage or payment of

1  benefits.  See, e.g., Cardenas v. Navigators Ins. Co., No. C11-5578 RJB, 2011 WL 6300253, at

2  *6 (W.D. Wash. Dec. 16, 2011).  "Whether an insurer acted in bad faith is a question of fact."

3  St. Paul Fire and Marine Ins. Co. v. Onvia, Inc., 165 Wash.2d 122 (2008) (quoting Smith v.

4  Safeco Ins. Co., 150 Wash.2d 478 (2003)).  "Questions of fact may be determined on summary

5  judgment as a matter of law where reasonable minds could reach but one conclusion."  Smith, 78

6  P.3d at 1277.  "If the insured claims that the insurer denied coverage unreasonably in bad faith,

7  then the insured must come forward with evidence that the insurer acted unreasonably."  Id.

8       While Liberty concedes "its response to the tender was late" (Dkt. No. 14 at 14), the

9  delay alone is insufficient by itself to create liability.  "The regulations require the insurer to

10  acknowledge and act reasonably promptly upon communications with respect to claims . . . upon

11  notice of a claim, an insurer should respond within ten working days."  Cardenas v. Navigators

12  Ins. Co., No. C11-5578 RJB, 2011 WL 6300253, at *6 (W.D. Wash. Dec. 16, 2011).  But

13  "[v]iolations, if any, of the 10 and 30 day time periods for acknowledging a claim and

14  completing an investigation, are simple technical violations and standing alone, do not evidence

15  any unreasonable conduct on the part of [the insurer] in promptly responding to the tender."

16  Cardenas v. Navigators Ins. Co., No. C11-5578 RJB, 2011 WL 6300253, at *6 (W.D. Wash.

17  Dec. 16, 2011).

18       If Liberty did breach its duty to defend, it was not unreasonable, frivolous, or unfounded.

19  In the Underlying Complaint, the City explicitly defines the Property at issue as that belonging to

20  the Whites and almost all the violations occurred on the Property, "occurrences" excluded under

21  the Policy.  (See Underlying Complaint, ¶ 2.2.)  Burien alleges that the "Whites injured,

22  damaged, or killed trees located on the Property without permits," added new dormers "to

23  increase living space at the west side of the residence," and "installed a fountain on the west edge

24

1  of the Property without permits." (Id., ¶¶ 3.9, 3.11(b), 3.13 (emphasis added).) Only a few of
2  the allegations are ambiguous about where the violations occurred. (See, e.g., id., ¶ 3.14 ("The
3  Whites installed a fence within the shoreline jurisdiction.").)

4      Mr. White's counsel also reported that the allegations "relate to work [Mr. White] did
5  when he first moved in," which was several years before Plaintiffs purchased the Policy.
6  (Eversole Decl., Ex. 3 at 10.) Adding further confusion, before submitting the tender that
7  included an unstamped draft complaint, Mr. White called Liberty to report that he was in a legal
8  battle after complaining about a City storm drain, a claim that was not in line with the
9  Underlying Litigation that had been going on for almost a year at that point. (Id.)

10      Because of this ambiguity, Liberty was entitled to investigate. Duty to Defend, 16A
11  Wash. Prac., § 28:8 ("If the complaint is ambiguous, and may or may not allege covered claims,
12  the insurer must go behind the complaint and investigate before refusing to defend."). Yet
13  Plaintiffs made this process more difficult by failing to provide the letter the City sent the Whites
14  that was referenced in the Underlying Complaint or respond to Liberty's seven attempts to
15  contact Plaintiffs' attorneys over the course of six weeks. It is also worth noting that Plaintiffs
16  waited 13 months to notify Liberty of the Underlying Lawsuit, undermining their arguments that
17  Liberty's five-month delay—during which time the Underlying Lawsuit was stayed—was
18  inherently unreasonable.

19      Because Plaintiffs have not demonstrated that Liberty's conduct caused any actual harm
20  or that Liberty unreasonably refused to defend, they are not entitled to a presumption of harm or
21  coverage by estoppel. And Plaintiffs have failed to establish the necessary elements for breach
22  of the duty to defend and IFCA.

23  //

24

## Conclusion

The Court finds that Liberty has a duty to defend Plaintiffs in the Underlying Lawsuit under the broad applicable standard. But Plaintiffs have failed to demonstrate that Liberty unreasonably refused to defend, and therefore have not met the summary judgment standard on their claims for breach of the duty to defend, coverage by estoppel, or violation of IFCA. Plaintiffs' Motion is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 28, 2020.

Marsha J. Pechman
United States Senior District Judge